| | |
|---|---|
| From: | LFGNotifications@LFG.com |
| Sent: | Monday, January 8, 2024 1:49:05 PM |
| To: | SUPPORT@JPRICEMCNAMARA.COM; |
| CC: | |
| BCC: | |
| Subject: | [Send Secure]Gainwell Acquisition Corp Claim No. 11580689 Amy Ray Knight |
| Attachments: | 77pmdyp7r79e8qgvzglj_16882176.pdf; |

This notification contains important information regarding a claim with Lincoln Financial Group company. THIS IS AN AUTOMATED EMAIL. PLEASE DO NOT RESPOND. You may use the contact information in the attached letter to respond if needed.

EXHIBIT

2

The Lincoln National Life Insurance Company
Disability and Life Claims Appeal
PO Box 2578
Omaha, NE 68103-2578
Phone No.: (888) 437-7611
Secure Fax No.: (603) 334-0401

January 8, 2024

J. Price McNamara
10455 JEFFERSON HIGHWAY
STE 130
BATON ROUGE, LA 70809

RE: Long Term Disability (LTD) Benefits
Gainwell Acquisition Corp
Claim #: 11580689
Claimant: Amy Ray Knight

Dear J. Price McNamara:

We have completed our review of your appeal for Long Term Disability (LTD) benefits and the original determination to deny benefits beyond August 25, 2023 is being maintained.

***Initial Appeal Decision***

Amy Ray Knight filed a claim for her absence from work as of February 25, 2021 as a result of fibromyalgia, bilateral lower extremity weakness, left knee, and right hip pain. Ms. Knight's claim was initially approved through November 11, 2022 and benefits beyond November 11, 2022 were denied as the evaluation concluded Ms. Knight was no longer disabled as defined by the Policy.

During the initial appeal evaluation, Ms. Knight's claim was reviewed by Dr. Andrew Nava, a physician Board Certified in Physical Medicine and Rehabilitation. Dr. Nava attempted to complete a peer to peer conversation with Dr. Craig Greene and Dr. Bryan Griffith, however, his attempts were unsuccessful. Dr. Nava noted there were no abnormal objective findings after January 27, 2023 however, concluded it was reasonable to assume Ms. Knight's objective findings and functional deficits would persist for at least three months after January 27, 2023. Dr. Nava further concluded given the lack of recent progress notes, functional impairment after April 27, 2023 was not supported. Restrictions are as follows up through April 27, 2023:

- Standing/Walking: No longer than 30 minutes over a 2 hour period. No more than 2 hours in an 8-hour day
- Sitting: Unrestricted or unlimited, but noting changing positions as necessary or comfort
- Pushing/Pulling/Lifting/Carrying: Up to 20 pounds occasionally
- Bending/Stooping/Kneeling: Occasionally
- Climbing: Never ladders, occasionally stairs
- Bilateral Upper Extremity: Unrestricted overhead, waist level, and below desk level reaching, keyboarding, typing, mousing, gripping, and grasping

Dr. Nava opined Ms. Knight could work full-time, eight hours per day, five days per week within the above restrictions and limitations. Dr. Nava noted Ms. Knight had impairments related to her left knee and right hip pain which was supported by objective examination findings and imaging findings and required functional limitations and restrictions to prevent further aggravation of her existing medical conditions accordingly.

On July 24, 2023, we sent you a letter which included a copy of the clinical review performed in connection with your request for appeal. You were given an opportunity to review and respond with any additional information you would like considered before a final determination was made on the appeal. A deadline for response was given of August 14, 2023. The deadline was subsequently extended to September 13, 2023.

On August 17, 2023 we received your letter dated August 17, 2023 with enclosures 1 – 6.

On August 25, 2023 we received a copy of your August 17, 2023 letter with enclosures 7 - 10.

Dr. Nava completed an addendum clinical review and determined based on the additional information received, his previous determination was altered given Ms. Knight's complex medical history with multiple medical conditions and complaints. Taking into consideration the entire clinical picture Dr. Nava concluded additional restrictions were supported, however, not to the point of total disability. For the timeframe specified, Ms. Knight had abnormal objective examination findings related to the left knee, including pain and tenderness, the lower extremities, including weakness with a history of falls, as well as pain in the left elbow and right wrist. Lumbar spine findings included tenderness in the paraspinal right lumbar spine with hypersensitivity and positive straight leg raise in the lower extremity. There was also evidence of a decreased range of motion of the right wrist with tenderness as well as a weak left hand grip.
There were several affidavits as well as restrictions by providers that stated Ms. Knight was unable to work even at a sedentary level, and while she was restricted based on objective examination findings and subjective complaints, there was no evidence she was completely limited from work based on physical findings alone. For example, Ms. Knight and several notes state that she had complex regional pain syndrome of the upper extremity, however, there was a lack of objective examination findings to support this. There was also no evidence of upper extremity weakness, which would have precluded any use of the upper extremities. There was no evidence of an impairment related to the cervical spine or shoulders that would impair any type of reaching. In summary, Dr. Nava opined the following restrictions and limitations were supported:

- Standing/Walking: No longer than 15 minutes at a time over a 2-hour period. No more than 1 hour total in an 8-hour day due to bilateral lower extremity weakness and fall risk/history of falls
- Sitting: Unrestricted or unlimited, but noting changing positions as necessary or comfort
- Pushing/Pulling/Lifting/Carrying: Up to 10 pounds occasionally
- Bending/Stooping/Kneeling: Occasionally
- Climbing: Never ladders or stairs due to falls/fall risk
- Bilateral Upper Extremity: Unrestricted overhead, waist level, and below desk level reaching
- Occasional keyboarding, typing, mousing, gripping, and grasping due to hand weakness/pain

Dr. Nava continued to support Ms. Knight's capacity to sustain full-time work eight hours per day, five days per week within the above restrictions and limitations.

In order to ensure every potentially disabling condition was evaluated, Ms. Knight's claim was additionally reviewed by Dr. Elbert Greer Richardson, a physician Board Certified in Psychiatry. Dr. Greer attempted to complete a peer to peer conversation with Dr. James West and Dr. Venugopal Vatsavayi, however, his attempts were unsuccessful. Dr. Greer concluded Ms. Knight had a documented history of symptoms of major depressive disorder and generalized anxiety disorder. Dr. Greer concluded with the documentation and information provided there was no evidence of findings to suggest limitations of Ms. Knight's activities. Ms. Knight reported she had dealt with depression and anxiety on and off since she was twenty five years old and has been on and off medications as well since then. Ms. Knight noted her depression and anxiety were in good control for the most part. Her subjective reports of symptoms were consistent with her diagnosis and acknowledged; however, Dr. Greer concluded her symptoms and clinical findings were not of a severity as to limit occupational functioning. Ms. Knight's overall ability to perform activities of daily living and engage in certain therapeutic activities had been maintained. On multiple encounters and follow-ups with Dr. Vatsavayi for her psychiatric progress, the majority of her Mental Status Exam findings revealed unremarkable results. Additionally, Ms. Knight underwent therapy and medication that she noted to be helpful. Dr. Greer opined the overall clinical picture was not consistent with the presence of an impairing psychopathology and restrictions were not warranted.

Ms. Knight's claim was reviewed by a vocational consultant for an Occupational Analysis at which time it was concluded her Own Occupation (defined below) was most often performed at a sedentary physical demand level. Sedentary physical demand level is defined as having the capacity to lift, carry, push, and pull up to ten pounds occasionally. It involves mostly sitting and may involve standing or walking for brief periods of time. The vocational consultant noted the occupation requires frequent keyboard use. As such, Ms. Knight was precluded from performing her Own Occupation.

Ms. Knight's LTD benefits began on August 26, 2021, therefore the change in definition of disability occurred on August 26, 2023 and to receive benefits beyond twenty-four months you must be disabled from Any Occupation (defined below).

As such, Ms. Knight's claim was reviewed by a vocational consultant for a Transferrable Skills Analysis based on her prior work history, educational background, and/or life experience and capacity within the most restrictive restrictions and limitations outlined above by Dr. Nava. The analysis showed Ms. Knight had the following skills:

**Transferrable Skills:**
**Consultant**
Applying advanced logic and scientific thinking to solve complex problems; understanding symbolic language, computer technology, technical terms, charts, and graphs in dealing with numerical and statistical data; speaking and writing clearly and accurately; using judgment and known facts to make decisions; and using eyes, hands, and fingers.

**Utilization Review Coordinator**
Applying logic and management skills to plan, direct, or supervise specialized social service programs; analyzing materials and interpreting wide variety of subject matter; making decisions using judgment, experience, knowledge of legal requirements, and other known facts; speaking and writing effectively to influence actions of others; and planning and directing activities of others.

**Nurse, Supervisor and Nurse, General Duty**
Applying technical knowledge, common sense, and special medical skills to care for or treat sick or handicapped people; using eyes, hands, and fingers skillfully; adapting quickly to emergency situations; instructing, planning, and directing work of others; keeping accurate records; and distinguishing shapes, forms, and colors.

Based on these skills and the restrictions and limitations outlined above, Ms. Knight was able to perform the following occupations:

| **Occupation** | **Monthly Wage** |
|---|---|
| Consultant | $6,332 |
| Director, Nurses Registry | $6,332 |
| Tourist Information Assistant | $3,262 |
| Customer Complaint Clerk | $3,148 |
| Job Development Specialist | $5,353 |

In summary, Ms. Knight was precluded from performing her Own Occupation up through August 25, 2023. However, the information did not contain sufficient evidence Ms. Knight was precluded from performing Any Occupation.

On September 21, 2023, we sent you a letter which included a copy of the clinical reviews and vocational assessment performed in connection with your request for appeal. You were given an opportunity to review and respond with any additional information you would like considered before a final determination was made on the appeal. A deadline for response was given of October 11, 2023. The deadline was subsequently extended to November 1, 2023.

On October 31, 2023 we received your letter dated October 24, 2023 with the following information:

- Statement from Ms. Knight dated October 20, 2023
- Emergency Department notes from Our Lady of the Lake Regional Medical Center dated August 2, 2023
- Urinalysis report

Dr. Nava completed an addendum review of the additional information received and attempted additional peer to peer telephone calls with Dr. West, however, his attempts were unsuccessful. Dr. Nava concluded the additional information altered his prior responses from his prior assessments. On August 2, 2023 Ms. Knight was seen in the emergency room after a fall and a CT scan of the left lower extremity revealed an acute non-displaced fracture of the anterior patella without definitive intra-articular extension. An X-ray of the left elbow and right knee revealed no acute findings. The recommendation was given for a knee immobilizer and weight-bearing as tolerated with crutches if needed and follow up with orthopedics. Ms. Knight was discharged home in stable condition. On September 20, 2023 a urinalysis revealed moderate blood, cloudy clarity, large leukocyte esterase, and positive nitrite. Based on the additional information provided, the previous restrictions are altered from Mr. Knight's August 2, 2023 injury date to the present as follows:

- Standing up to 15 minutes at a time over a 2 hour period, but no more than 1 hour total in an

8 period of time due to bilateral lower extremity weakness and fall risk/history of falls

- Walking up to 15 minutes at a time over a 2 hour period, but no more than 1 hour total in an 8 period of time due to bilateral lower extremity weakness and fall risk/history of falls
- Sitting unrestricted or unlimited with the ability to shift/change positions as necessary for comfort
- Pushing/pulling/lifting/carrying up to 10 pounds occasionally
- No bending/stooping/kneeling due to left patellar fracture
- No climbing ladders or stairs due to falls/fall risk and left patellar fracture
- Bilateral upper extremity unchanged

Dr. Nava acknowledged Ms. Knight's statement and reported limitations, however, noted there was a lack of objective examination findings from any provider to support an alteration of the previous restrictions. For example, Ms. Knight stated she was unable to sit for more than fifteen to thirty minutes at a time due to extreme pain in her limbs and lower back and for more than a total of two to three hours in a day without experiencing extreme pain in the limbs and lower back, however, there was a lack of physical examination findings to support this claim. Ms. Knight also stated she cannot lift or carry a gallon of milk, which weighs approximately eight pounds, without severe pain, however, Dr. Nava opined there was a lack of objective examination findings to support that claim. Dr. Nava noted that the previous determination to push, pull, lift, and carry up to ten pounds occasionally should be sufficient based on the previous report and documentation.

A Transferrable Skills Analysis addendum was completed by a vocational consultant with the updated restrictions and limitations supported by Dr. Nava. Based on the skills and restrictions and limitations outlined above, the alternate occupations of Consultant, Director, and Customer Complaint Clerk remained viable and the following additional alternate occupations were identified:

| **Occupation** | **Monthly Wage** |
|---|---|
| Nurse Case Manager | $6,768 |
| Pre-Certification Nurse | $6,768 |
| Utilization Review Nurse | $6,768 |

On November 16, 2023, we sent you a letter which included a copy of the addendum clinical review and vocational assessment performed in connection with your request for appeal. You were given an opportunity to review and respond with any additional information you would like considered before a final determination was made on the appeal. A deadline for response was given of December 7, 2023.

On November 20, 2023 we received your letter dated November 20, 2023 which indicated no additional evidence would be submitted thus we proceeded with our review of your appeal.

Ms. Knight's claim was denied as of August 26, 2023 because she was not disabled from performing Any Occupation. Please note, Ms. Knight's claim was not supported beyond August 25, 2023, however, benefits were paid through October 24, 2023. The basis for the decision was outlined in a letter dated November 21, 2023. You were provided an additional opportunity to request an appeal review of the denial, stating the reasons you felt that Ms. Knight's claim should not have been denied, and submit additional information to support her claim.

***Appeal***

In your letter dated December 5, 2023 you indicated you were appealing the determination to deny Ms. Knight's claim.

This appeal review and analysis considered all the medical and claim documentation contained in Ms. Knight's Long Term Disability administrative records, whether or not specifically referenced in this document.

***Appeal Evaluation***

During the evaluation for appeal, Ms. Knight's claim was reviewed by Dr. Mauro Zappaterra, a physician Board Certified in Physical Medicine and Rehabilitation. Dr. Zappaterra attempted to complete a peer to peer conversation with Dr. Gary McDaniel, however, his attempts were unsuccessful. Dr. Zappaterra provided the following summaries of the medical information contained in Ms. Knight's file:

*On January 5, 2023, the claimant was seen in a follow up office visit by Dr. West. The claimant is currently seeing psychiatry for chronic depression and anxiety. The claimant continues to have persistent pain involving her left upper extremity. She has been unable to do any significant lifting or repetitive work with her left upper extremity for a few years now. She also suffers from chronic pain in the right wrist. The physical exam shows normal neck range of motion, with musculoskeletal exam showing right wrist with pain on active and passive range of motion and direct palpation. There is no edema in the extremities. The neurological exam was normal.*

*On January 16, 2023, a letter was written by Dr. West, internal medicine. The claimant continues to have pain in the left upper extremity and right wrist. The pain is chronic. The physical ailments and disabilities have exacerbated her mental health problems. Her depression and anxiety have been intensified.*

*On January 27, 2023, the claimant was seen for a right hip pain by Dr. Greene. The claimant has had right hip pain for several years. The pain is rated at 8 out of 10. On physical exam, she has full range of motion of the right hip. There is tenderness to palpation at the greater trochanteric (GT) bursa. There is a positive straight leg raise on the right. There is some hypersensitivity along the anterior lateral thigh. Also down the posterior calf with numbness in the distribution. There is five and a five strength in the bilateral lower extremities. There is decreased sensation along the L4 – L5 distribution. Lumbar and right hip x-rays were unremarkable.*

*On April 24, 2023, a brain magnetic resonance imaging (MRI) without contrast was normal.*

*On May 22, 2023, the claimant was seen for fibromyalgia by Dr. McDaniel. Physical exam was unremarkable.*

*On June 8, 2023, Dr. Vatsavayi saw the claimant is psychiatric follow up. The claimant is being seen for depression. The patient was referred to a neuropsychological testing. She feels like her depression is in good control.*

*On August 2, 2023, the claimant was seen in the emergency room after a fall. Computed tomography (CT) scan of the left lower extremity revealed acute non-displaced fracture of the anterior patella without definitive intraarticular extension. X-ray of the left elbow and right knee revealed no acute findings. The recommendation was for a knee immobilizer and weight-bearing as tolerated, crutches if needed and follow up with orthopedics. The claimant was discharged*

*home in stable condition.*

*On August 8, 2023, Dr. West stated that the claimant has health and safety risks that would pose a problem to self and others and is not fit to return to work.*

*Results of multiple diagnostic studies are reviewed.*

Taking into consideration the entire clinical picture from the review of all medical records provided, Dr. Zappaterra concluded the following restrictions and limitations were supported based on Ms. Knight's continued right hip and left knee pain and recent left patella fracture:

- Stand - 15 minutes at time and for total1 hour for an 8-hour workday
- Walk - 15 minutes at time and for total1 hour for an 8-hour workday
- Sit - unrestricted with ability to change positions as necessary for comfort
- Push - occasionally up to 10 pounds
- Pull - occasionally up to 10 pounds
- Lift - occasionally up to 10 pounds
- Carry - occasionally up to 10 pounds
- Bend - Never
- Stoop --Never
- Kneel - Never
- Climbing - Never stairs, never ladders
- Repetitive upper extremity movements such as Simple Grasping, Fine Manipulation, Keyboarding, Feeling/tactile sensation - unrestricted
- Reaching to below waist - unrestricted
- Reaching to waist level - unrestricted
- Reaching to shoulder level and above - unrestricted

Dr. Zappaterra opined the medical documentation did not support a medical condition that would have precluded Ms. Knight from sustained occupational functioning on a full-time basis. Dr. Zappaterra acknowledged the diagnosis of complex regional pain syndrome, however noted there was no documentation of any objective evidence of that diagnosis on physical exam. The severity and scope of Ms. Knight's reported pain, especially in the left upper extremity, was not consistent with the intensity of treatment or the physical exam findings. On the most recent physical exam in Auguste, Ms. Knight had complete and normal range of motion of the left upper extremity with no documentation of any signs of complex regional pain syndrome.

On December 18, 2023 Dr. Zappaterra faxed a letter to Dr. McDaniel with a summary of his assessment and a request for response with any additional information, however, to date Dr. Zappaterra has not received a response from Dr. McDaniel.

Regarding Ms. Knight's comorbid diagnoses of depression and anxiety, Ms. Knight was notified in a letter dated August 26, 2021 that any diagnoses related to mental illness had a mental nervous limitation in accordance with the Policy provision below (see *Mental Illness and/or Substance Abuse Limitation*). Ms. Knight's benefits began on August 26, 2021; thus, the maximum duration for any and all conditions related to a mental illness was reached on August 26, 2023. As Ms. Knight's claim had reached the limitation on such diagnoses, a review of potential impairment from a mental nervous condition was not completed. Furthermore, the most recent progress notes from psychiatrist Dr. Venugopal Vatsavayi dated June 8, 2023 noted Ms. Knight was seen for a follow up

visit at which time Dr. Vatsavayi indicated Ms. Knight denied any suicidal ideations or psychotic symptoms, she stated her depression was in good control, and her Mental Status Exam was unremarkable. Additionally, there were no treatment notes from a psychiatric provider or mental health professional for review of Ms. Knight's mental nervous conditions beyond June 8, 2023 to include therapy notes, psychiatric records, or more recent Mental Status Examinations within the review period of August 26, 2023 to the present. As such, a clinical review with a psychiatric specialist was not completed.

Given the supported restrictions and limitations imposed by Dr. Zappaterra were less restrictive than those imposed by Dr. Nava, the previously identified alternate occupations remained viable.

On December 19, 2023, we e-mailed you a letter which included a copy of the clinical review performed in connection with your request for appeal. You were given an opportunity to review and respond with any additional information that you would like considered before a final determination was made on the appeal. A deadline for response was given of January 8, 2024.

On January 1, 2024 we received your letter dated January 1, 2024 at which time you confirmed you would not be submitting additional evidence; thus, your response was considered complete and we proceeded with our review of your appeal.

***Conclusion***

We conducted a thorough and independent review of the entire claim. In summary, we acknowledge Ms. Knight may continue to experience symptoms associated with her conditions beyond August 25, 2023. However, the information does not contain sufficient exam findings, diagnostic test results, or other forms of medical documentation to support Ms. Knight's symptoms and impairments remained of such a severity, frequency and duration that they resulted in restrictions and limitations that would have rendered her unable to perform the duties of the occupations identified as being within her functional capacity and vocational skills as of August 26, 2023 at which time we evaluated her ability to perform Any Occupation.

Having carefully considered all the information submitted in support of your claim, our position remains that proof of Ms. Knight's continued disability in accordance with the Policy provisions beyond August 25, 2023 has not been provided. Therefore, no further benefits are payable.

This claim decision reflects an evaluation of the claim facts and Policy provisions.

***Policy Provisions***

In order to continue receiving benefits, you must satisfy the requirements of all Policy provisions that state, in part:

*"**Disability**" or "**Disabled**", with respect to Long Term Disability, means:*
*1. For persons other than pilots, co-pilots, and crewmembers of an aircraft:*
*i. that during the Elimination Period and the next 24 months of Disability the Covered Person, as a result of Injury or Sickness, is unable to perform the Material and Substantial Duties of his Own Occupation; and*
*ii. thereafter, the Covered Person is unable to perform, with reasonable continuity, the Material and Substantial Duties of Any Occupation.*

*"**Material and Substantial Duties**", with respect to Long Term Disability, means responsibilities*

*that are normally required to perform the Covered Person's Own Occupation, or any other occupation, and cannot be reasonably eliminated or modified.*

***"Own Occupation"****, with respect to Long Term Disability, means the Covered Person's occupation that he was performing when his Disability or Partial Disability began. For the purposes of determining Disability under this policy, Lincoln will consider the Covered Person's occupation as it is normally performed in the national economy.*

***"Any Occupation"*** *means any occupation that the Covered Person is or becomes reasonably fitted by training, education, experience, age, physical and mental capacity.*

***"Proof"*** *means the evidence in support of a claim for benefits and includes, but is not limited to, the following:*
*1. a claim form completed and signed (or otherwise formally submitted) by the Covered Person claiming benefits;*
*2. an attending Physician's statement completed and signed (or otherwise formally submitted) by the Covered Person's attending Physician; and*
*3. the provision by the attending Physician of standard diagnosis, chart notes, lab findings, test results, x-rays and/or other forms of objective medical evidence in support of a claim for benefits.*

*Proof must be submitted in a form or format satisfactory to Lincoln.*

***Discontinuation of the Long Term Disability Benefit***
*The Monthly Benefit will cease on the earliest of:*
*1. the date the Covered Person fails to provide Proof of continued Disability or Partial Disability and Regular Attendance of a Physician; …*
*9. the date the Covered Person is no longer Disabled according to this policy;*
*10. the end of the Maximum Benefit Period; …*

***Mental Illness and/or Substance Abuse Limitation***
*The benefit for Disability due to Mental Illness and/or Substance Abuse will not exceed a combined period of 24 months of Monthly Benefit payments while the Covered Person is insured under this policy.*

*If the Covered Person is in a Hospital or Institution for Mental Illness and/or Substance Abuse at the end of the combined period of 24 months, the Monthly Benefit will be paid during the confinement.*

*If the Covered Person is not confined in a Hospital or Institution for Mental Illness and/or Substance Abuse, but is fully participating in an Extended Treatment Plan for the condition that caused Disability, the Monthly Benefit will be payable to a Covered Person for up to a combined period of 36 months.*

*In no event will the Monthly Benefit be payable beyond the Maximum Benefit Period shown in the Schedule of Benefits.*

Under the Employee Retirement Income Security Act (ERISA) appeal guidelines, you were entitled to appeal the decision made by The Lincoln National Life Insurance Company (Lincoln), and to

submit any additional information you wished to be considered as part of the appeal. Lincoln has conducted a full and fair review of your appeal and accompanying materials and has concluded that the denial of benefits will be maintained.

At this time, your administrative right to review has been exhausted; no further review will be conducted by Lincoln and Ms. Knight's claim will remain closed. You may request to receive, free of charge, copies of all documents relevant to Ms. Knight's claim. You have the right to bring a civil action under section 502(a) of ERISA following an adverse benefit determination on review.

The Gainwell Acquisition Corporation's Group Disability Income Policy contains the below provision:

***Legal Proceedings***
*A claimant or the claimant's authorized representative cannot start any legal action:*
*1. until 60 days after Proof of claim has been given; or*
*2. more than one year after the time Proof of claim is required.*

If Ms. Knight's Policy is subject to ERISA, you may have other voluntary alternative dispute resolution options, such as mediation. One way to find out what may be available is to contact Ms. Knight's local U.S. Department of Labor Office or state insurance regulatory agency. In addition, once all required reviews of your client's claim have been completed, you have the right to bring a civil action under applicable law. Your client's employer's Policy has a contractual limitations period of one year, which means that a lawsuit must be brought within one year after the date written proof of claim or proof of continued disability was required. The date on which the contractual limitations period expires for this claim is January 8, 2025.

This information is provided for purposes of this claim only, as the time proof of claim is required may differ based on claim specifics and applicable policy language.

Nothing in this letter should be construed as a waiver of any Lincoln rights and defenses under the above captioned Policy, and all of these rights and defenses are reserved to the Company, whether or not they are specifically mentioned herein.

Decisions made by Lincoln are based on the provisions outlined in Gainwell Acquisition Corporation's Policy. These provisions are not contingent on decisions made by either the Social Security Administration or other disability-determining entities. No internal rules, guidelines, protocols, standard or other similar criteria were relied upon in rendering the claim determination.

If you require language translation assistance, please contact Lincoln to initiate a service provided free of charge to assist with understanding your claim and appeal rights.

如果您需要翻译方面的帮助，请联系我，我会免费为您服务以便了解您的要求和诉求。

Shá ata' hane'go shiká a'doowol nínízingo saad hosíníłįį' dóó ná'ookąąh nínízingo naaltsoos nííníltsoozígíí hazho'ó bik'idi'deeshtįįł nínízingo dóó bąąh ílínígóó níká a'doowol éí biniiyé shił hodíílnih áko ákwe'égi níká adeeshwoł.

Si necesita traducción, contácteme para iniciar un servicio gratuito a fin de ayudarle a entender sus

derechos de reclamo y apelación.

Kung nangangailangan ka ng tulong sa translation, mangyaring makipag-ugnayan sa akin upang gumamit ng serbisyong ibinigay nang walang bayad upang matulungan kang maunawaan ang iyong mga karapatan sa paghahabol at pag-aapela.

If you have any questions regarding this matter, please contact me.

Sincerely,

Jennifer DiMaggio
Claim Resolution Specialist
Phone No.: (888) 437-7611 Ext. 59238
Secure Fax No.: (603) 334-0401